1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KIMBERLY ANTOINETTE ROOTS,              No.  2:13-cv-1247 AC

12              Plaintiff,

13        v.                                 ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying her application for a period of disability and disability insurance

20   benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security

21   Income ("SSI") under Title XVI of the Act.  The parties' cross-motions for summary judgment

22   are pending.  For the reasons discussed below, the court will grant in part plaintiff's motion for

23   summary judgment and will grant in part defendant's cross-motion for summary judgment.[1]

24                            PROCEDURAL BACKGROUND

25        Plaintiff filed applications for DIB and SSI on May 14, 2010, alleging disability beginning

26   on July 17, 2003 (later amended to August 17, 2009) due to fibromyalgia, arthritis, panic attacks

27   _____

28   [1] This matter is before the undersigned pursuant to the consent of the parties.  See ECF Nos. 7, 9.

                                        1

and depression.[2]  Administrative Record ("AR") 132-33, 134-40, 157, 480.  Plaintiff's

applications were denied initially and again upon reconsideration.  AR 62-63, 67-68.  On

February 2, 2012, a hearing was held before administrative law judge ("ALJ") Trevor Skarda.

AR 39-61.  Plaintiff appeared with attorney representation at the hearing, at which she and a

vocational expert, George Meyers, testified.  See id.  In a decision dated February 23, 2012, the

ALJ issued an unfavorable decision finding that plaintiff was not disabled.  AR 18-33.  The ALJ

made the following findings (citations to 20 C.F.R. omitted):

> 1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> 2.   The claimant has not engaged in substantial gainful activity since September 5, 2009, the day after the previous denial.
>
> 3.   The claimant has the following severe impairments: fibromyalgia; obesity; and major depressive disorder.
>
> 4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1.
>
> 5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can engage in no more than occasional pushing or pulling with the bilateral upper extremities. She can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She must avoid even moderate exposure to irritants, such as fumes, odors, dusts, gases, and poorly ventilated areas, and must avoid all hazards, defined as exposure to operational control of machines and unprotected heights. She is limited to simple routine repetitive tasks and low stress work, defined as requiring no more than occasional decision-making and no more than occasional changes in the work setting.
>
> 6.   The claimant is unable to perform any past relevant work.
>
> 7.   The claimant was born on January 21, 1971 and was 38 years old, which is defined as a younger individual age 18-49, on September 5, 2009.
>
> 8.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a

---

[2] Plaintiff previously filed a claim that was denied on September 4, 2009 on reconsideration.  See AR 153.

2

framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.  The claimant has not been under a disability, as defined in the Social Security Act, from September 5, 2009, through the date of this decision.

AR 21-33.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Council denied review on April 26, 2013, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-3.

FACTUAL BACKGROUND

Born on January 21, 1971, plaintiff was 38 years old on the alleged onset date of disability and 41 years old at the time of the administrative hearing.  Plaintiff has a high school education and obtained an AA degree in liberal studies.  AR 270.  At the time of the administrative hearing, plaintiff weighed 306 pounds standing at a height of 5'10", and she had four children, then-aged between 2 and 18.  She alleges disability due to fibromyalgia, arthritis, panic attacks, and depression.

LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "It means such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v.

3

1  N.L.R.B., 305 U.S. 197, 229 (1938)).  "While inferences from the record can constitute

2  substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v.

3  Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

4        Although this Court cannot substitute its discretion for that of the Commissioner, the

5  Court nonetheless must review the record as a whole, "weighing both the evidence that supports

6  and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec' y of

7  Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir.1988); see also Jones v. Heckler, 760 F.2d

8  993, 995 (9th Cir.1985).

9        "The ALJ is responsible for determining credibility, resolving conflicts in medical

10  testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

11  (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation,

12  one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v.

13  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the Court may review only the reasons

14  stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not

15  rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d

16  871, 874 (9th Cir. 2003).

17        The Court will not reverse the Commissioner's decision if it is based on harmless error,

18  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

19  ultimate nondisability determination.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

20  2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

21  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

22                                        ANALYSIS

23        Plaintiff seeks summary judgment on the grounds that: (1) the ALJ erred in his evaluation

24  of plaintiff's credibility, (2) the ALJ improperly discredited the opinion of her treating physician,

25  and (3) the ALJ improperly discredited the opinion of a consulting psychiatrist.  The

26  Commissioner argues that the ALJ's decision is supported by substantial evidence and is free

27  from legal error.

28  ////

                                        4

A.      Plaintiff's Credibility

       1.      Relevant Background

       The Court turns first to plaintiff's argument that the ALJ improperly assessed her credibility.  According to plaintiff's August 26, 2010 Adult Function Report, she gets up at 6 a.m. to get her children ready for school.  AR 167-74.  After they leave, she cares for her then-9-month old son, and, "if [she] feel[s] like it," she'll cook dinner.  Her older children help her care for the baby when she's having a really bad day, and they will also generally do most of the cooking and cleaning.  Plaintiff shops for food and clothes approximately once a month and goes out to run errands when needed.  She likes to read, crochet and watch TV, though she doesn't crochet anymore because her hands hurt.  Plaintiff's illness affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, and use hands.  She does well with written and spoken instructions, and she gets along well with authority figures.  She admits to isolating herself when she gets stressed, though she is able to make necessary adjustments when faced with changes to routine.

       Per plaintiff's testimony at the February 2, 2012 administrative hearing, she stopped working on December 18, 2008 due to stress and due to "all over" pain related to her fibromyalgia.  AR 42-61.  She experiences pain in her back, feet, and legs, and she sometimes gets spasms in her neck.  As a result of her pain, plaintiff is no longer able to do normal daily chores, such as cooking and cleaning.  At the time of the hearing, plaintiff's four children ranged in age from 2 to 18 years old.  Plaintiff's older children help her with household chores and child care, but she does take care of the youngest by herself when the older children are in school.  On her bad days, which amount to 3-4 days per week, she stays in bed all day.

       2.      Legal Standards

       The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged.  Bunnell, 947 F.2d at 346; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen v. Chater, 80 F.3d at 1281-82, n.2. The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely

1    because they are unsupported by objective medical evidence.  Reddick, 157 F.3d at 722; Bunnell,

2    947 F.2d at 343, 345.  If the ALJ finds the claimant's pain testimony not credible, the ALJ "must

3    specifically make findings which support this conclusion."  Bunnell, 947 F.2d at 345.  The ALJ

4    must set forth "findings sufficiently specific to permit the court to conclude that the ALJ did not

5    arbitrarily discredit claimant's testimony."  Thomas, 278 F.3d at 958; see also Rollins v.

6    Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); Bunnell, 947 F.2d at 345-46.  Unless there is

7    evidence of malingering, the ALJ can reject the claimant's testimony about the severity of a

8    claimant's symptoms only by offering "specific, clear and convincing reasons for doing so."

9    Smolen, 80 F.3d at 1283-84; see also Reddick, 157 F.3d at 722.  The ALJ must identify what

10   testimony is not credible and what evidence discredits the testimony.  Reddick, 157 F.3d at 722;

11   Smolen, 80 F.3d at 1284.

12           3.      Analysis

13           In considering plaintiff's subjective statements, the ALJ found that her medically

14   determinable impairments could reasonably be expected to cause the alleged symptoms, but her

15   statements concerning the intensity, persistence and limiting effects of these symptoms are not

16   entirely credible.  The ALJ noted that, "[a]lthough the claimant does experience some pain, the

17   few objective findings in the record, the minimal treatment she has received, and her ability to

18   perform a variety of daily activities suggest that this pain is neither as severe nor as limiting as

19   she stated."  AR 28.

20           a.      Few Objective Findings

21           The ALJ first noted that there is little objective evidence to support plaintiff's testimony

22   that the pain she experiences throughout her body prevents her from working.  The ALJ

23   specifically referenced the normal examinations of doctors, the only occasional note of the

24   presence of tender points, plaintiff's normal gait, full strength in all muscle groups, and a normal

25   range of motion in all areas.  While the record supports the ALJ's findings, "physical

26   examinations [of fibromyalgia patients] will usually yield normal results—a full range of motion,

27   no joint swelling, as well as normal muscle strength and neurological reactions."  Preston v. Sec.

28   of Health and Human Servs., 854 F.2d 815, 817-18 (6th Cir. 1988).  Fibromyalgia, instead, is

1   "diagnosed entirely on the basis of patients' reports of pain and other symptoms." Benecke v.

2   Barnhart, 379 F.3d 587, 590, 594 (9th Cir. 2004).  "[F]ibrositis patients manifest normal muscle

3   strength and neurological reactions and have a full range of motion.  Thus, the standard clinical

4   tests and observations . . . to detect neurological and orthopaedic disease [are] of little aide or

5   relevant in the diagnosis of . . . disabling fibrositis, except as a means of excluding certain

6   neurologic or orthopaedic causes . . . ." Id. at 820.  The ALJ accordingly erred in relying on the

7   lack of objective evidence in finding plaintiff not entirely credible.

8                      b.        Minimal Treatment Received

9           The ALJ next referenced the minimal treatment provided for plaintiff's fibromyalgia and

10   the stability of plaintiff's medication over time.  AR 28.  Evidence of minimal and conservative

11   treatment may form the basis for undermining plaintiff's credibility regarding the severity of the

12   ailment.  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); see also Parra v. Astrue,

13   481 F.3d 742, 750-51 (9th Cir. 2007) (stating that evidence of conservative treatment is sufficient

14   to discount a claimant's testimony regarding severity of an impairment).  The record here,

15   however, does not evidence minimal or conservative treatment.  Rather, it reveals that plaintiff

16   was seen a total of 26 times between 2006 and 2011 and that, during that time period, she was

17   prescribed the following medications: Abilify (for depression), Cyclobenzaprine (for muscle

18   spasms), Ibuprofen (for pain), Paroxetine (for depression), Amlodipine Besylate (for

19   hypertension), Hydrocodone (for pain), and Gabapentin (for pain).  See AR 222, 348-58, 427-32,

20   470-76.  This hardly constitutes minimal treatment.

21           Moreover, though the ALJ relies on the stability of plaintiff's medication over the years as

22   a reason in discounting plaintiff's credibility, it must be remembered that there is no cure for

23   fibromyalgia.  Benecke, 379 F.3d at 589-90.  There is no evidence in the record from any

24   physician that anything more could have been done that would have alleviated plaintiff's

25   symptoms.  In this case, then, plaintiff's testimony regarding her subjective symptoms may not be

26   discounted on grounds of limited and conservative care.  The nature and extent of plaintiff's

27   treatment is not so conservative as to call into question plaintiff's subjective testimony.  Further,

28   there is not substantial evidence in the record to support the ALJ's inference that plaintiff's

7

1    debilitating pain and symptoms would be alleviated if she were to secure more aggressive

2    treatment.  Indeed, as noted, there is no surgical or other cure for fibromyalgia, which can be a

3    debilitating disease.  See Jordan, 370 F.3d at 872 (recognizing that there is no cure for

4    fibromyalgia).  Thus, this reason for rejecting plaintiff's subjective complaints is not convincing.

5                    c.      Failure to Follow Through on Referral to Pain Management Specialist

6            The ALJ also cited plaintiff's failure to follow through on a referral to a pain management

7    specialist.  See AR 28.  The record, though, is devoid of any reference to plaintiff's failure to

8    follow through on this referral.  In fact, the record only evidences her doctor's *plan* to refer her,

9    see AR 427-28; there is no indication that he (or any other doctor) in fact referred her or that

10   plaintiff failed to follow through on the referral.

11           Defendant argues that when the ALJ's interpretation of the record is rational, the Court

12   must defer to it.  See Def.'s Cross-Mot. Summ. J. at 13.  While generally true, see Burch, 400

13   F.3d at 680-81, deference is not warranted here because the ALJ's interpretation is not rational.

14   There is simply nothing in the record even remotely suggesting that plaintiff failed to follow

15   through on a referral to a pain management specialist.  Accordingly, the ALJ's reliance on this

16   reason in discounting plaintiff's credibility was in error.

17                   d.      Activities of Daily Living

18           Finally, the ALJ noted that, "while [plaintiff] has indicated that she is unable to perform

19   most daily activities, the evidence demonstrates that this is not the case."  AR 28.  Specifically,

20   the ALJ wrote:

21                   The claimant has consistently told examining doctors that she can
                     care for her personal needs, do some chores around the house, and
22                   prepare meals.  She also has a two-year-old child.  Though she
                     testified that her older children provide childcare for the baby, she
23                   also testified that they are in school during the day and that she
                     must take care of the child during that time.
24

25   Id.

26           The record supports these observations.  Nonetheless, the ALJ does not explain how

27   plaintiff's ability to perform the above-noted activities translates into the ability to perform full-

28   time work.  See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (noting that the "mere

                                                    8

1    fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car,

2    or limited walking for exercise, does not in any way detract from her credibility as to her overall

3    disability").  As the Ninth Circuit noted in <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989):

> The Social Security Act does not require that claimants be utterly
> incapacitated to be eligible for benefits, <u>see, e.g.</u>, <u>Howard v.</u>
> <u>Heckler</u>, 782 F.2d 1484, 1488 (9th Cir. 1986) (claim of pain-
> induced disability not gainsaid by capacity to engage in periodic
> restricted travel); <u>Gallant</u>, 753 F.2d at 1453 (ordering award of
> benefits for constant back and leg pain despite claimant's ability to
> cook meals and wash dishes), and many home activities are not
> easily transferable to what may be the more grueling environment
> of the workplace, where it might be impossible to periodically rest
> or take medication. Yet if a claimant is able to spend a substantial
> part of his day engaged in pursuits involving the performance of
> physical functions that are transferable to a work setting, a specific
> finding as to this fact may be sufficient to discredit an allegation of
> disabling excess pain.

12   In general, the Commissioner does not consider "activities like taking care of yourself, household

13   tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial

14   gainful activities.  20 C.F.R. § 404.1572(c).  <u>See also</u> 20 C.F.R. § 404.1545(e).

15        Here, plaintiff testified that she suffers from bad days approximately 50% of the time, that

16   on the bad days she is in bed all day, and that she'll cook once a week at least but her oldest son

17   does most of the cooking.  AR 44-45.  Additionally, in her Adult Function Report, plaintiff wrote

18   that her older children help feed, bathe and clothe the youngest child; that she needs help with

19   personal care; and that her children help her with housework.  AR 167-74.  It is unclear to the

20   Court how these activities of daily living are inconsistent with plaintiff's allegations of pain.

21        For these reasons, the Court finds that the ALJ failed to set forth clear and convincing

22   reasons for discounting plaintiff's subjective complaints.  Accordingly, plaintiff is entitled to

23   summary judgment in her favor with respect to this claim.

24   B.    <u>Opinion of Treating Physician</u>

25        1.    <u>Relevant Background</u>

26             a.    <u>Treatment History</u>

27        Plaintiff next argues that the ALJ improperly discredited the opinion of treating physician,

28   Dr. Elvis Tanson, who treated plaintiff from June 2006 through November 2011.  <u>See</u> AR 348-58,

427-32.  Plaintiff was first seen by Dr. Tanson on June 28, 2006, as a new patient after being treated by another doctor for fibromyalgia with severe pain in the joints and hips.  AR 358.  At that initial appointment, Dr. Tanson described plaintiff as "doing well" despite diffuse body aches and pains.  Id.  Since that appointment, plaintiff was seen by Dr. Tanson five times in 2006 for a variety of issues, including cough and cold symptoms, AR 356-57; ongoing shoulder pain that was either due to bursitis or a spur, AR 356-57; right shoulder and right leg pain, which Dr. Tanson deemed was caused by a spur, and for which he referred plaintiff to physical therapy, AR 356; and pain in plaintiff's right forearm, though she stated that physical therapy was helpful, AR 355.

In January 2007, plaintiff complained of generalized bodyaches due to fibromyalgia.  AR 355.  Dr. Tanson's examination revealed that plaintiff was "quite depressed" and her "cervical muscle, thoracic as well as lumbar paraspinal muscles are all quite tender to palpation.  Patient's left arm is also somewhat weak."  Id.  Diagnosed with generalized bodyaches, fibromyalgia and depression, plaintiff was started on Effexor and her prescriptions for Vicodin and Baclofen were refilled.  Id.  Despite these complaints, plaintiff did not keep her next two appointments, and fibromyalgia was not mentioned again in 2007, despite three additional visits (for bilateral foot pain possibly due to heel spurs, allergic rhinosinusitis, and a pap smear).  AR 353-54.

From January through December 2008, Dr. Tanson treated plaintiff, for, inter alia, a sinus infection, bloody nipple discharge, generalized body pruritus, and a referral for a sleep study in preparation for gastric bypass surgery.  AR 351-52.  Plaintiff's fibromyalgia was not referenced at all during these visits.  At the end of the year, though, on December 2, 2008, Dr. Tanson noted that plaintiff was "very depressed, crying and complaining about being stressed at home as well as having pain allover [sic]," AR 350.  Plaintiff was referred to counseling and given Paxil, Abilify and Restoril.  Id.

Between January and August 2009, plaintiff complained only of coughing and sneezing and sinusitis with allergic rhinitis.  AR 349-50.  In August 2009, plaintiff asked Dr. Tanson to complete disability forms due to her fibromyalgia because, at the time, she was six months pregnant.  AR 349.  Dr. Tanson's notes from this examination reveal that plaintiff was stable.  Id.

On December 8, 2009, plaintiff returned to Dr. Tanson with complaints of hypertension and a request for follow-up regarding her fibromyalgia. AR 348. Dr. Tanson determined that plaintiff would continue with her current medication as directed. Id.

Plaintiff saw Dr. Tanson two times in 2010. On June 23, 2010, she was examined with complaints of chronic pain syndrome with fibromyalgia, hypertension and allergy problem. AR 348. After noting that plaintiff was not in acute distress and that she had full range of motion, Dr. Tanson again determined that plaintiff would continue her current pain medications for fibromyalgia as directed and that plaintiff's hypertension was not controlled due to her noncompliance with medication.[3] Id. On December 1, 2010, Dr. Tanson saw plaintiff for a follow-up on her chronic fibromyalgia. AR 427. Dr. Tanson noted diffuse tenderness in her neck, back, elbows and knees and indicated that his plan was to refer plaintiff to a pain specialist for further evaluation and treatment. In the meantime, he indicated that there would be no change to her hypertensive medication or her pain medication. Id.

In 2011, Dr. Tanson saw plaintiff three times. On July 21, 2011, he saw her for a follow-up regarding, inter alia, plaintiff's chronic pain, especially in the neck and shoulders. AR 479. As to the fibromyalgia, Dr. Tanson gave her Flexeril and advised her to continue her current pain medication plan. Id. Plaintiff's last appointment with Dr. Tanson was on November 30, 2011, when plaintiff went in for a checkup and medication refill. AR 478. At this appointment, plaintiff also complained of depression, for which she had been taking medication but stopped due to the birth of her baby. Id. For plaintiff's anxiety and depression, Dr. Tanson resumed plaintiff on Abilify and Paxil.[4] Id.

---

[3] Plaintiff was seen two more times in 2010, first by a physician's assistant and then by another doctor. See AR 428. The physician's assistant examined plaintiff on July 14, 2010 for a follow-up on chronic back pain and fibromyalgia. At that appointment, plaintiff asked for a note for her apartment manager saying that she was having a hard time going upstairs. On October 15, 2010, plaintiff was seen by a doctor for a general checkup. At this appointment, plaintiff stated that she would like a referral to a rheumatologist. She indicated that she continues to have some pain, and that the medication recently given seems to be helping some.

[4] On March 17, 2011, plaintiff was seen by a physician's assistant "with complaints of shoulder and neck pain with numbness and would like to follow up on chronic fibromyalgia." See AR 427. It was noted that plaintiff had pain in her neck, back and shoulders, and was diagnosed with (continued…)

1              b.     Residual Functional Capacity Questionnaire

2       On January 14, 2011, Dr. Tanson completed a Fibromyalgia Residual Functional Capacity

3 Questionnaire. AR 459-62. He noted that plaintiff meets the American College of Rheumatology

4 criteria for fibromyalgia, that she is not a malingerer, that fatigue and stress precipitate her pain,

5 and that her prognosis is good. When asked to identify plaintiff's symptoms, Dr. Tanson checked

6 off the following from a list: multiple tender points, chronic fatigue, muscle weakness,

7 breathlessness, and anxiety.

8       As for plaintiff's functional limitations, Dr. Tanson determined that plaintiff's symptoms

9 frequently[5] interfere with her attention and concentration, and accordingly she is only capable of

10 low stress jobs. He opined that plaintiff can occasionally lift and carry 10 pounds or less, rarely

11 lift and carry 20 pounds, and never lift or carry 50 pounds. She could never twist, stoop,

12 crouch/squat, climb ladders, or climb stairs, but she could occasionally look down (sustained

13 flexion of the neck), turn head right or left, look up, and hold head in a static position. He noted

14 that plaintiff's impairments are likely to produce good and bad days, and that he estimates

15 plaintiff will miss about three work days per month as a result of her impairments.

16           2.     Legal Standards

17       Generally, the opinions of treating doctors should be given more weight than the opinions

18 of doctors who do not treat the claimant. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998);

19 Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Where the treating doctor's opinion is not

20 contradicted by another doctor, it may be rejected only for "clear and convincing" reasons

21 supported by substantial evidence in the record. Lester, 81 F.3d at 830. Stated differently, a

22 treating physician's opinion must be given controlling weight if it is well-supported and not

23 inconsistent with the other substantial evidence in the record. Lingenfelter v. Astrue, 504 F.3d

24 1028 (9th Cir. 2007). However, if the treating doctor's opinion is contradicted by another doctor,

25 the ALJ may reject the opinion of a treating physician by providing "specific and legitimate

26 _____

   chronic pain with fibromyalgia. She was given Neurontin for the pain and advised to continue

27 with her current pain medication.
  [5] "Frequently" is defined as 34% to 66% of an 8-hour workday. AR 460.

28

1    reasons" supported by substantial evidence in the record.  Lester, 81 F.3d at 830 (quoting Murray

2    v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).  This can be done by setting out a detailed and

3    thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof,

4    and making findings.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  In sum, the ALJ

5    must do more than offer bare conclusions; he must explicitly support his interpretation of the

6    medical evidence by explicitly citing sufficient reasons which explain why the evidence provided

7    by the treating physician is not entitled to the increased evidentiary weight typically accorded to

8    it, as well as identify substantial evidence supporting the contradictory interpretation.  Embry v.

9    Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

10        Despite their potential weight, evidence provided by treating physicians is not above

11   reproach.  For example, treating physician opinions that fail to equate objective findings to

12   specific functional limitations precluding work activity are not entitled to deference.  Morgan v.

13   Comm'r, 169 F.3d 595, 601 (9th Cir. 1999).  Also, where a treating source's opinion is based

14   largely on the plaintiff's own subjective description of his or her symptoms, and the ALJ has

15   discredited the plaintiff's claim as to those subjective symptoms, the ALJ may reject the treating

16   source's opinion.  Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989).  Even if found to be less

17   than controlling, however, the opinions of treating physicians may not be disregarded entirely.

18        If a treating physician's opinion is not given controlling weight because it is not well

19   supported or because it is inconsistent with other substantial evidence in the record, the ALJ is

20   instructed by Title 20 of the Code of Federal Regulations section 404.1527(d)(2) to consider the

21   factors listed in section 404.1527(d)(2) through (6) in determining what weight to accord the

22   opinion of the treating physician.  Those factors include the "[l]ength of the treatment relationship

23   and the frequency of examination" by the treating physician; and the "nature and extent of the

24   treatment relationship" between the patient and the treating physician. 20 C.F.R.

25   404.1527(d)(2)(i)-(ii).  Other factors include the supportablility of the opinion, consistency with

26   the record as a whole, the specialization of the physician, and the extent to which the physician is

27   familiar with disability programs and evidentiary requirements.  20 C.F.R. § 404.1527(d)(3)-(6).

28   ////

13

1      3.     Analysis

2      In this case, the ALJ gave little weight to Dr. Tanson's opinion because it is inconsistent

3 with the medical evidence of record, including Dr. Tanson's own treatment notes.  The ALJ also

4 noted that there is no evidence to suggest that plaintiff is entirely incapable of performing postural

5 tasks, is unable to maintain attention or concentration, or would need to be absent from work

6 several times per month.  AR 30.  As to plaintiff's postural limitations, the ALJ noted that

7 plaintiff "has a full range of motion in her neck, indicating that Dr. Tanson's limitations in that

8 area are not based on the objective findings."  AR 30.

9      In the context of fibromyalgia, the Ninth Circuit has recognized that objective findings

10 "do not establish the presence or absence of [the disease]."  Jordan v. Northrop Grumman Corp.,

11 370 F.3d 869, 872 (9th Cir. 2003), overruled on other grounds by Abatie v. Alta Health & Life

12 Ins., 458 F.3d 955, 970 (9th Cir. 2006) (en banc).  Because "fibromyalgia's cause or causes are

13 unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely

14 subjective.  There are no laboratory tests for the presence or severity of fibromyalgia."  Id.  In

15 Jordan, a case in which benefits were denied for fibromyalgia, the Ninth Circuit recognized that

16 objective tests are administered to rule out other diseases and alternative explanations for the pain

17 but do not establish the presence or absence of fibromyalgia.  Id. at 873, 877.  It cannot be

18 objectively proven.  Id. at 877.

19      Here, then, the ALJ's reliance on the lack of objective evidence is not supported by

20 substantial evidence and is contrary to the record.  The ALJ in effect is requiring objective

21 evidence of exertional musculoskeletal or neurological limitations that are inconsistent with an

22 impairment whose symptoms are non-exertional and cannot be proven by objective evidence:

23 pain, fatigue, depression, sleep disturbance, inability to concentrate, etc., all of which are amply

24 documented in the physician treatment records here.  Neither Benecke nor SSR 12–2p require the

25 kind of evidence that the ALJ improperly demands here.  Moreover, there is in fact evidence in

26 the record to support, for example, plaintiff's need to be absent from work several times per

27 month.  Plaintiff testified at the February 2, 2012 administrative hearing that she suffers from bad

28 days approximately half of the time each week and that, on those days, she remains in bed all day.

1    Additionally, plaintiff's complaints of pain and fatigue, both well-documented, could reasonably

2    cause the postural limitations identified by Dr. Tanson.  See, e.g., AR 357 (medical note

3    indicating that plaintiff's right shoulder pain results in limited range of motion), id. 355 (medical

4    note reflecting plaintiff's complaints of generalized bodyaches due to fibromyalgia and weakness

5    in plaintiff's left arm), and id. 364 (September 14, 2010 medical note of examining psychologist

6    reflects that weight issues and back pain limit plaintiff's ability to lift and bend).

7           When, as in this case, the severity or degree of limitation stemming from fibromyalgia is

8    at issue, the claimant's credibility takes on particular significance.  See Rogers v. Comm'r Soc.

9    Sec. Admin., 486 F.3d 234, 248 (6th Cir. 2007) ("given the nature of fibromyalgia, where

10   subjective pain complaints play an important role in the diagnosis and treatment of the condition,

11   providing justification for discounting a claimant's statements is particularly important").

12   Because the ALJ's evaluation of plaintiff's credibility was flawed, see supra, and because

13   assessment of plaintiff's functional limitations is inextricably intertwined with her subjective

14   reports of pain and limitation, the flaws in the credibility finding permeate the assessment of Dr.

15   Tanson's opinion regarding plaintiff's limitations stemming from her fibromyalgia.  In light of

16   the error in the credibility analysis and based on the ALJ's improper demand for objective

17   findings in considering Dr. Tanson's opinion, it does not appear that plaintiff's fibromyalgia

18   limitations were adequately considered by the ALJ.

19   C.      Opinion of Consulting Psychiatist

20           1.      Relevant Background

21           Lastly, plaintiff argues that the ALJ erred in his rejection of the opinion of consulting

22   psychiatrist, Dr. Les Kalman, who evaluated plaintiff on January 13, 2012.  AR 464-67.  In his

23   evaluation, Dr. Kalman relied on plaintiff, whom he noted was a good historian, and

24   accompanying records with diagnoses of dysthymia.  Plaintiff's chief complaint at the evaluation

25   was pain from fibromyalgia.  She stated that her pain had been ongoing for 20 years and that she

26   has been depressed "most of my life," but that things have gotten worse emotionally with the

27   physical disabilities.  She also stated that she is frustrated with her kids, who are not doing well in

28   school and who get in trouble with the law.  She said, "I feel like a failure as a parent."  Dr.

Kalman noted plaintiff to be alert and oriented, with average intelligence and fair judgment.  She was found to have a depressed mood, constricted affect, and vegetative signs (sleeping about 6 hours, 50 pound weight gain in past two years, decreased energy).  Plaintiff's typical day was described as "get kids ready for school. Take medications. Clean. Take care of the two year old. Watch TV.  Help cook dinner."  Dr. Kalman diagnosed plaintiff with dysthymia, adjustment disorder, depressed, related to medical condition.  He indicated that she is not expected to improve significantly within the next twelve months unless her medical condition improves.

Dr. Kalman also completed a Medical Source Statement concerning the nature and severity of plaintiff's mental impairment.  AR 468-71.  There, he noted that plaintiff would not be significantly limited in understanding and memory, sustained concentration and persistence, social interaction and adaptation, except as follows: (1) she would be *mildly limited* in her ability to maintain attention and concentration for extended periods and to work in coordination or in proximity to others without being unduly distracted by them, and (2) would be *moderately limited* in her ability to understand, remember and carry out detailed (3 or more steps) instructions or tasks which may or may not be repetitive, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and to accept instructions and to respond appropriately to criticism from supervisors.  He also indicated that plaintiff would be unable to complete a workday approximately three times per month.

2.    Analysis

In giving Dr. Kalman's opinion some weight, the ALJ stated:

> Dr. Kalman had the opportunity to examine the claimant and his opinion is also partially consistent with the medical evidence of record.  As discussed above, the claimant is capable of performing simple, repetitive tasks.  In addition, her pain and depression affect her ability to handle stress, and she would benefit from working in a low stress environment.  There is, however, no evidence to suggest that she will be absent from work three times per month or that she has any difficulty interacting with supervisors or completing a normal workday.  Portions of Dr. Kalman's opinion are consistent with the evidence and I accordingly give it some weight.

AR 30-31.

1    On review, the Court finds that the ALJ erred insofar as he gave limited weight to Dr.

2    Kalman's opinion on the basis that there is no evidence to suggest that plaintiff will be absent

3    from work or is unable to complete a normal workday.  Plaintiff's own statements indicate that

4    her pain, fatigue and depression cause her to stay in bed all day when she is experiencing a bad

5    day.  See, e.g., AR 45 ("On bad days I'm in the bed all day," and "I'm usually in the bed I'd say

6    50 percent of the time."), id. 363 (plaintiff, considered by an examining psychologist to be a

7    "reliable historian," stated that her current mental health symptoms affect daily living because "I

8    stay in bed all day."), and id. 464 (plaintiff, considered by Dr. Kalman to be a "good historian,"

9    spoke about experiencing fatigue and no energy).  This pain and fatigue could reasonably be

10   expected to cause her to be absent from work three days per month and/or to complete a normal

11   workday.

12   Regardless, when there is substantial evidence supporting the ALJ's decision and the error

13   does not affect the ultimate nondisability determination, the error is harmless.  See Carmickle v.

14   Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008); Stout v. Comm'r Soc. Sec.

15   Admin., 454 F.3d 1050, 1055 (9th Cir. 2006); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d

16   1190, 1195-97 (9th Cir. 2004).  Here, the Court concludes that the ALJ properly found that there

17   is no evidence to suggest that plaintiff would be moderately impaired in her ability to accept

18   instructions and to respond appropriately to criticism from supervisors.  Plaintiff's own source

19   statement indicates that she can follow written and spoken instructions and can get along with

20   authority figures well.  See AR 172-73.  She has never been fired from a job because of problems

21   getting along with other people, id. 173, and, per her statements to an examining psychologist, her

22   work history has been steady, id. 364.[6]  Accordingly, the ALJ's ultimate determination as to Dr.

23   Kalman must be upheld.

24   ////

25

26   [6] Plaintiff last worked at Delta College doing clerical work, but stopped due to stress caused by
     pain stemming from fibromyalgia.  AR 43, 364.  Prior to that, she worked at Dillard's, a

27   department store, for one year.  Id. 364.  The longest job she held was for seven years at Blue
     Shield of California as a data entry clerk.  Id.

28

17

1    For the reasons set forth above, this case shall be remanded for renewed consideration of

2  plaintiff's credibility, the extent of plaintiff's limitation due to pain and fatigue resulting from her

3  fibromyalgia, as well as re-consideration of Dr. Tanson's medical opinion regarding plaintiff's

4  functional limitations.

5                                    CONCLUSION

6    Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that:

7    1.  Plaintiff's motion for summary judgment is granted in part;

8    2.  The Commissioner's motion for summary judgment is granted in part; and

9    3.  This matter is remanded for further proceedings consistent with this order.

10 DATED: June 24, 2014

11                                _____

12                                ALLISON CLAIRE
                                  UNITED STATES MAGISTRATE JUDGE

18